Thank you, Your Honors. This case is similar in that it In this case you made it to summary judgment. That's correct. And we believe that the summary judgment was improperly granted based upon the admission of evidence that we objected to in our response and there was no, nothing with respect to a reply indicating why that evidence should have been admitted. I'm having trouble hearing you again. I'm sorry. Our objection was to evidence that was relied upon by the court. There was a letter of Mr. Valfrey and in that letter he claims that my clients were simply difficult to deal with. But he wasn't the, I mean, this all happened in 2001, right? That letter was written in 2001. Am I right? That's correct. And it was submitted as proof of that a determination had been made, whether true or not, that you were not eligible, that your client wasn't eligible or shouldn't be allowed to have Section 8 Kenans. And it's proof that a determination was made. It's not proof that any of the facts were true. But whether any of the facts were true was certainly beyond any limitations period because it was in 2001. Yeah, yeah. And we're not bringing any action. They introduced that letter. Right. What's wrong with having the letter in there for the limited purposes of demonstrating that you were, that the city had made determinations that you should not be allowed to do, that a client shouldn't be allowed to have Section 8 rentals and that it remained in effect. Why isn't that good for that purpose? Well, first of all, the letter was hearsay. We objected on that grounds. I'm sorry. I don't understand. It's hearsay about what? About whether my clients were difficult to deal with. But that's not the question. That's not why it was admitted to prove that. Well, my understanding was that it was used by the judge to demonstrate that there was a rational basis for the actions that were taken against my client. Right. Being that they had been barred, you know, long ago and that there were no challenge to the bar. And the bar was still valid. It was still a valid bar. It was still a bar. It may not be valid. It was in place. And it was too late to challenge it, essentially. Well, yeah. The bar was actually, well, I don't know that it was challenged at one point. But despite the bar, this case arose when three contracts were, housing contracts were approved. Correct. They were approved. They weren't even signed. They were signed. Shortly thereafter, they were rescinded. And the tenants were basically told to leave, which they did. Had the tenants moved in? They had. Well, I think one of them, yeah, I think one of them had. But all of the And the city decided, because they were improvidently entered, that basically they could rescind the contracts. Additional evidence was produced that the person in charge had admitted that there was a personal vendetta that the city basically, or she at least, had against my clients. And she was the person that was involved in the process. Is there a fact question about Patterson, sir? There is. She denied that at her deposition, correct? She did. She did. And that's a factual issue that should have required a trial. But in any event, because of the personal vendetta, my clients... What was the actual language in the video about the personal vendetta? She didn't say, I have a personal vendetta against that, against Kunarski. No, it was actually, it was one of the three tenants that had signed. Right. And what, why did she report that was said? She was explaining that... I know, but what was the language? That there was a, that this woman had a personal vendetta. No, I thought it was something to the effect of they had a personal vendetta against each other. No, it was against my clients. I didn't think that was what it said. The YouTube video is of the tenant... Correct. ...who wanted to stay and asked Morales what the problem was. And that's when it came up. That's correct. That's correct. And what this basically reveals is that, and even since that point in time, with respect to those three contracts, every other opportunity that my clients have had to have another Section 8 tenant, they've been deprived of that opportunity. Now, we don't contend that there is a constitutional right to participate in Section 8. That has been, in and of itself, decided that there is no such right. However, our clients do have the right not to be discriminated against with respect to their opportunity to participate in that program, just as other people who seek to participate in that program are granted the right to do so. In addition, it has, there was evidence that was presented that our clients were actually blacklisted, which creates all kinds of problems in terms of the impact... That was just a term that was used, right? That's getting back to the letter. Well, it's a term, but their practical effects is that my client can't get tenants, they complete... Under Section 8. Under Section 8, yeah, that they can't go to another municipality and try to do the same thing under Section 8, because there will be a check of their background, and it'll be determined that they don't have the ability under City of Tucson to participate, so they won't be able to participate in other municipalities. You're saying the disqualification is infectious? Yes, definitely. They couldn't go to Mesa, Tempe, Gilbert, Chandler, the same result would be... Yeah, they would refer back to the City of Tucson, and because of the City of Tucson's refusal to participate with my clients and these other municipalities would not either. In addition, our clients have actually attempted to obtain property management jobs and are unable to do so because of the infectious result of this particular activity. Does Tucson have any formal process for qualifying for Section 8 rental status? Yeah, my understanding is that to qualify for Section 8 status, you do have to pass certain standards that are set by the HUD, and that provided you pass those standards, typically you are qualified. So what happened here, as I understand it, is that at least the paperwork must have demonstrated that they met the standards, and they were approved, because somebody who approved it didn't know about these prior bars, I guess. So the question is, is there some provision for barring people permanently? Well, that's one of our complaints. So one of the things that we pointed out, too, is that we have had a tenant, or my clients have had a tenant in their facility for over 20 years under Section 8. Every year, they have to be approved and make sure that they meet the standards that HUD requires, and every year they have. Despite the fact that that has continued, so they obviously are qualified, they are not allowed to participate in the program because of this quote-unquote... Kagan. But given proper procedures, you could presumably have, and notice and so on, you could say that, you know, given our experience with this person, we're not going to let them do Section 8 anymore if their standard is applicable and they were given proper procedures and so on. Now, is that what they purport happened here? No. No. No one even contends that that's what happened. There was no hearing, no opportunity of my clients to be heard as to why they're not... Well, now, but suppose in 2001, I don't know what happened in 2001, but suppose in 2001 there had been, you know, all the procedure in the world and a conclusion with which you might disagree, but a conclusion after a regular hearing and so on, that these people done X, Y, and Z, and therefore we're not going to let them do Section 8 rentals anymore. I don't believe there was a hearing. That was not my understanding. I understand that, but I'm saying that you could have such a system and it could be binding now, right? Yeah, I think you could have such a system. And I gather that that's sort of what the city is saying. We made this determination in the past and you can't do it. If we let you do it, it was a mistake. I think the city is saying they made a determination. We're saying the determination was arbitrary and capricious. You're saying the current one was arbitrary and capricious, but suppose they just say we made a mistake now. We'd already barred you regularly, you know, in a perfectly good process. Right. Well, there's no evidence in the record to that effect and it's not my understanding. To what effect? To the effect that they had a hearing back in 2001. But you can't challenge that now because it's way late. No, but we can challenge whether or not they are currently being debarred from participating improperly without having an opportunity to be heard. If there wasn't a hearing back in 2001, then they shouldn't have. You haven't alleged there wasn't. You haven't alleged there was anything wrong with that process. Well, we're alleging that our clients are deprived of their constitutional rights to participate on an equal basis with anyone else who wants to participate in this program. And the response is you're barred. And the reply is we haven't been barred constitutionally. We've just been told we can't do that. Well, do you have to do it over and over again? Well, I don't know that it was ever done. I understand that, but you haven't alleged that it wasn't done. Well, they never alleged that it was. I mean, we're going back and forth. All right. You want to save the rest of your time for rebuttal? I will. Thank you. Thank you. Thank you, Your Honors. I'd like to first address the equal protection issue, because the plaintiff is again alleging that there's either a class in one or. What's the status of this personal vendetta language? The district court said there was absolutely no, nothing in the record to support it. There apparently is a YouTube thing. So what did he mean when he said there's nothing in the record to support it? First of all, because Your Honor was correct, the language in the video is not that there is a vendetta. She doesn't say there's a vendetta between Ms. Morales and my, against my landlord. She says a vendetta between Morales and my landlord. So it is ambiguous as to whether it's personal between them or not. But that still makes it personal. I mean, it may be, who knows which direction it runs. It still sounds like a personal reason for, you know, he doesn't like me or I don't like him, or we just don't like each other. But either way, it's still not based on anything relevant to a city determination. I think it's in the context of this case. First of all, she contradicts that a month earlier in what was admissible. Well, that's a summary judgment. Or this is a complaint, so. This is summary judgment. All right. So summary judgment. So she said one thing and then she said another thing. One of the, they didn't submit any admissible evidence on the YouTube. They cited it in their pleadings. You didn't object to it. We didn't object to it. Probably before the district court. Okay. Nonetheless. What did the district court mean when he said it wasn't there? Because it was there. I don't know what the district court meant by saying it, other than I don't think that it's on its face it says that there is a vendetta against these plaintiffs or it says anything. Well, but you have to look at it in the light most favorable to the nonmoving party. But you can't take totally ambiguous statements and say that could be for the plaintiff, particularly when that same person says I don't know the reason why I was terminated in an admissible affidavit. Given the history between Mr. Konarski and the city, it doesn't seem to be completely out of line. And I think that's part of why it can't be seen as necessarily malicious. It can certainly reflect the fact that there have been 12 lawsuits in 14 years. But that's different from personal. I mean, it's not the vendetta part. It's the personal. Now, of course, that's her characterization. And you certainly want to know more than that. But the question is, is it enough to survive summary judgment? And he didn't present that as evidence. The evidence he did present was contrary to that. What do you mean he didn't present it as evidence? By just simply citing to the YouTube. He had an affidavit from her. What do you mean by that? He could have had, he could have deposed her in the time they had. He could have had an affidavit from her. You could have deposed her, too. I don't think that was actually cited until later. Actually, it was in the, it was earlier. What did the magistrate judge say about the apparent contradiction between what the tenant says and what Peggy Morella says? In terms of? About vendetta. The Court didn't discuss that. At all? Because the only difference is that whether it's against or between. She could have said it's not a factual dispute. If it was a factual dispute, it's not a material fact or something else, but apparently she didn't discuss it at all. I think there was a reference to it. This was, again. What she said was there's no, there was no admissible evidence of the personal vendetta statement. So that's why she never addressed it, but that's wrong. There was. Whether it was admissible or not, no one's contesting whether it was admissible. And this was on a motion to amend the complaint, not the summary judgment itself. The summary judgment was on the issue of the due process request demand for the right to have Section 8 housing. And the Court did address it in the meager factual allegations that were submitted for a second amended and a second attempt at second amended, both of which didn't have sufficient facts. And even if you take that one fact of Morales and Konarski having a vendetta, there are other facts showing, A, there's a reason for that, and, B, that wasn't the decision. The decision was made before that in 2001. And as the Court noted, this is a continuation of a policy that's been in effect since 2001. And I would like to address the issue of the right to Section 8 housing. Yeah. So what she said about the vendetta was the judge, in her order, said the plaintiffs allege in their complaint that the rescission was caused by Defendant Morales's personal vendetta, but they present no admissible evidence in support of their theory. But they had the site to the YouTube video. And that was apparently the Court's determination. That was not submitted in any admissible fashion. She didn't say that, though. And you didn't object. That's correct. Okay. On the issue of the right to Section 8 housing. And just to talk about the admissibility, just to go back a minute. The admissibility, because it would be essentially a ‑‑ if they took the deposition of the tenant and she said Ms. Morales told me that the reason was that there was a personal vendetta, that would be admissible, right, because it would be an admission by the defendant? Yes, it would be. So if it's not admissible, it has to be for some other reason which nobody has told us what it is. That's correct. Okay. They did take Ms. Morales's deposition. And there's nothing in there that even questions whether she knew what their ethnic heritage was and she said she had no vendetta against them.  Hmm? She flat out denied. Yes. Yes. And that's the evidence the Court had on that issue. Did she admit mating with the tenant? I don't recall, Your Honor. Maybe counsel can tell us. You may. On the ‑‑ I want to address, say a few words about the due process claim. The due process claim. Because the plaintiffs are repeatedly saying, well, we're not doing what we did before. We don't really say there's a right to Section 8 housing. But we do say there's a right to Section 8 housing. And, in fact, their complaint says that. Their complaint says the allegation in Count 6 is that the city denied them the benefit of the Section 8 housing, the right to practice their chosen profession. Those are precisely the issues that were litigated in 2001. They're precisely the same issues the Seventh Circuit ruled on in the 2000s in Conn v. Bland that was cited in that case. Well, the only difference being that here they had a contract. Right? I mean, they had ‑‑ in other words, they weren't claiming the right here, the right to future Section 8 rentals. They were claiming the right to continue ones they already had. That's ‑‑ that may be a difference from the first one in 2001. There was this ‑‑ A difference from the Seventh Amendment case. It's not different from the Seventh Circuit. Conn v. Bland actually involved a breach of the contract there, or at least a claim to breach where ‑‑ Well, I gather the response is it's not a due process problem because if it's a breach of contract, you can go sue for breach of contract. Absolutely. Yeah. And you have a breach of contract claim. So that ‑‑ and there was a previous case that the Konarskis litigated that involved a breach of contract claim as well. This is now the fourth time this issue has been litigated. It is, I think, the third time it has come before this Court. And in the ‑‑ Now, the district court didn't decide it ‑‑ the district court didn't grant partial summary judgment on the due process claim on the basis of the prior cases, right? I believe it did. That there is no right to Section 8 housing and there's no right to due process hearings. But she didn't cite the prior judgments, the prior rulings as the basis for her order. I'm not sure if she cited Conn or not. She didn't cite the ones in this case, I don't think. That's correct. How does this work? I mean, when he ‑‑ were there already people living in this housing at the time that it was cut off? Yes. There were ‑‑ For a couple months, several months? I'm not sure. I think a couple ‑‑ a few weeks. Are there agreements filed for some period of time? I think it was two, three weeks. I'm not sure. But I mean, when they are ‑‑ when you get the approval of the Section 8 rentals, is it for a year or for some period of time? It's for each contract. So, yeah, each one would have been, I believe, a one‑year period that they would have been approved for. And when the city realized that somebody had inadvertently allowed the Konarskis to have lessees that were not supposed to be approved by Section 8. Did they bring up a breach of contract action? That can be a claim. But that's a state claim. That's not a constitutional claim. I understand that. And that's counts ones through five are really based on the state claims that the court was going to remand to the state court. This case was removed. That's correct. And whether there's a breach of contract can be decided in that case. But, again, there's substantial cases by both this circuit and the Seventh Circuit and this circuit in this case, this ‑‑ with this plaintiff, that he has no right to engage in his profession that's been hindered because he can lease to other people. And he doesn't have a right to the Section 8 housing because that's really the tenant's rights, if anything, not his. And it's not a formal debarment process. There is one for the Housing and Urban Affairs Department that applies across agencies. This is simply one agency's determination. We have, again, allegations, well, it was infectious. There are no facts to that for summary judgment. There are no facts alleged. I gather that to meet the need or the demand for Section 8 tenants, in order for the City of Tucson Housing Authority to meet the need for Section 8 housing and the tenants that would like to take the benefit of Section 8 housing, they don't need Mr. Konarski's units. That's correct. There are, in one of the emails that's in the record, over 1,400 landlords involved in the process. And so they don't need his particular assistance in that. All right. Okay. Thank you. Thank you, Your Honors. Do you have any rebuttal? Oh, right. Could you start with an answer to my question about what Peggy Morales said about even meeting with the tenant? She did meet with the tenant. He admitted that she did. She did. And that she didn't admit that she, you know, said that she had a personal vendetta. We understand that. Yeah. To clarify, with respect to the process that you were asking about earlier in terms of formal disbarment or debarment, it is not the province of the City of Tucson to do that. That's the province of the Housing and Urban Development. They're the only ones that can actually enter an order barring someone from participating in Section 8. The way it works is that the City of Tucson is an administrator for HUD and on a tenant-by-tenant basis, applications are provided to them and they make a determination of whether the applicant is they express a desire to where they want to go and whether the applicant can go to the person that they desire to rent from. And in this case, and the point that I want to try to make is that there's a difference between this and CON. We understand that CON states that there is no constitutional right to participate in Section 8. We understand that. But there is a constitutional right to be treated fairly. Now, CON says that there is probably a property interest in an existing contract. Well, yeah. And Arizona State law says that as well. But that the remedy goes to for breach of contract. Well, I think CON also states that if there is something. Which you didn't do, right? I'm sorry? Which you haven't done? Well, no. We have. Yes, no, why? In this case, is there a claim for breach of contract? Yes, there is. It got remanded to the State court. It got remanded, but it's waiting somewhere. Okay. Nothing's happened to it. So why isn't that the end of the story? You have a ‑‑ in terms of your constitutional right to property, you have one, but you have a remedy for it. We understand that. But we think that the actions that were taken by the City in connection with these three contracts evidences that there is a personal vendetta, that there is a ‑‑ That's a different point. That's the equal protection claim. But in terms of the due process claims, it appears that you have process, i.e., a breach of contract. Right. That's true. That's true. We did, in this case, actually file a motion to amend the complaint. And when the response was filed to our motion identifying alleged deficiencies in factual allegations, we, in our reply, submitted an additional amended complaint asking the court for leave to file it with the additional specific factual allegations. As to what? As to discriminatory treatment of my clients in connection with the Civil Rights Act. And to answer your other question, all three tenants did move in in this particular case. Did what? I'm sorry? All three tenants did move in to the tenancy.  I'll stop. The infectious ‑‑ this doesn't just affect my clients with respect to Section 8. Because it's low income housing, basically people talk, everybody knows what's going on. So in addition to depriving my clients of an opportunity to participate in Section 8, other tenants who aren't Section 8 tenants know that my clients are not even qualified under Section 8, why would I want to rent from you? That is in our briefs. Okay. I want you to know that. Okay. Thank you very much. Thank you. Thank you, counsel. We appreciate your arguments. The matter is submitted. And that ends our session for today and for the week. Thank you.  Thank you. Thank you. All rise. This court for this session stands adjourned.
judges: Hawkins, Paez, Berzon